# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| NEXMED HOLDINGS, INC., a Delaware corporation, <br><br> Plaintiff, <br><br> vs. <br><br> BETA TECHNOLOGIES, INC. a Utah corporation, and CHESTER HEATH, an individual, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART [273] AND [275] MOTIONS TO STRIKE EXPERT REPORTS AND EXCLUDE EXPERT WITNESSES AND GRANTING IN PART [306] MOTION TO COMPEL** <br><br> Case No.: 2:06-cv-01014 TC DN <br><br> Chief District Judge Tena Campbell <br><br> Magistrate Judge David Nuffer |

The magistrate judge is revisiting the previously raised issues of whether two of Defendants' expert witnesses may testify at trial and whether all or part of their reports should be stricken. In the late summer of last year, on similar motions,[1] the magistrate judge struck all or almost all of the expert reports from Defendant Chester Heath; and from Lynn Foster, former defense counsel.[2]

The magistrate judge permitted Defendants to give notice of any renewed intention to call these experts to testify at trial, but ordered that new reports would be required and that "any testimony at trial . . . shall be confined to the revised expert report[s]."[3] Of course, decisions

---

[1] Plaintiff's Motion to Strike the Expert Report of Lynn G. Foster and Exclude Mr. Foster's Testimony at Trial, docket no. 251, filed June 11, 2009; Plaintiff's Motion to Strike Portions of the Expert Report of Chester Heath and Exclude Mr. Heath's Testimony at Trial, docket no. 255, filed July 2, 2009.

[2] Memorandum Decision and Order Granting in Part Motion to Strike [Foster] Expert Report and Exclude Testimony (Order Striking Foster Report), docket no. 258, filed July 21, 2009, Memorandum Decision and Order Granting in Part Motion to Strike [Heath] Expert Report and Exclude Testimony (Order Striking Heath Report), docket no. 262, filed August 19, 2009.

[3] Order Striking Foster Report at 5; Order Striking Heath Report at 5.

about admissibility of any evidence and testimony at trial will be determined by the district judge.

New reports were filed by Mr. Foster[4] and by Mr. Heath[5] and new motions seeking to strike the reports and exclude testimony at trial were also filed.[6] In addition, Plaintiff seeks to compel additional deposition testimony from Mr. Foster and production from Defendants Beta and Heath.[7] Plaintiff believes that because Foster is an now an expert witness all conversations or documents to which he was a party – even before his transition from litigation counsel to expert witness – are no longer protected by attorney-client or work product privilege.[8]

## Standards for Expert Witnesses and Expert Reports

Federal Rule of Evidence 702[9] requires that an expert's testimony be based upon sufficient facts; that the testimony be the result of reliable methods; and that the witness reliably apply the principles or methods to the current facts. The court is to make the determination of admissibility and is to perform an inquiry as to the reliability and qualifications of the expert.

---

[4] Rule 26(a)2(B), F.R.Civ.P. Amended Expert Report of Lynn G. Foster (Amended Foster Report), docket no. 261, filed August 10, 2009

[5] Rule 26(a)(2)(B) F.R.Civ.P. Amended Expert Report of Chester Heath (Amended Heath Report), docket no. 266, filed September 8, 2009

[6] Plaintiff's Motion to Strike Portions of the Amended Expert Report of Lynn G. Foster and Exclude Testimony, docket no. 275, filed October 1, 2009; Plaintiff's Motion to Strike the Amended Expert Report of Chester Heath and Exclude Mr. Heath's Testimony at Trial, docket no. 273, filed October 1, 2009.

[7] Plaintiff's Motion to Compel Testimony of Expert Witnesses and Discovery Responses (Motion to Compel), docket no. 306, filed October 23, 2009.

[8] Motion to Compel at 1.

[9] If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

This inquiry is to be flexible and adapted to the circumstances at hand.[10] This analysis applies where the expert relies on skill or experience.[11]

The court must be satisfied that an expert is qualified; that the proposed expert testimony is both reliable and relevant; and that the testimony will assist the trier of fact.[12] In a determination of the admissibility of an expert's opinion, the court must first decide if the expert is qualified to provide an opinion "by knowledge, skill, experience, training or education."[13] If the expert is found sufficiently qualified, the court will then assess the reliability of methods employed through an evaluation of the fundamental reasoning and methodology of the expert's opinion, as set forth in *Daubert*.[14] If the expert is qualified and the opinion reliable, the court will then consider additional factors to determine whether testimony will assist the fact finder, including whether (1) the testimony is relevant, (2) it is within the juror's common knowledge and experience, and (3) it will usurp the juror's role of evaluating a witness's credibility.[15] The question at the essence of the analysis in *Daubert* is "whether [the] reasoning or methodology properly can be applied to the facts in issue."[16]

An expert's report must contain:

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;
(ii) the data or other information considered by the witness in forming them;
(iii) any exhibits that will be used to summarize or support them;

---

[10] *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 594 (1993).

[11] *Kuhmo Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 151 (1999).

[12] Fed. R. Evid. 702.

[13] *Id.; see United States v. Nacchio,* 555 F.3d 1234, 1241 (10th Cir. 2009), *cert.denied*, 130 S. Ct. 54 (2009).

[14] *Nacchio,* 555 F.3d at 1241.

[15] Memorandum in Support of Plaintiff's Motion to Strike Portions of the Expert Report of Chester Heath and Exclude Mr. Heath's Testimony at Trial at 3-4, docket no. 256, filed July 2, 2009, (citing *Daubert,* 509 U.S. at 591; *United States v. McDonald* 933 F.2d 1519, 1522 (10th Cir. 1991);*United States v. Lumpkin,* 192 F.3d 280, 289 (2d Cir. 1999)).

[16] *Daubert,* 509 U.S. at 593.

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
(v) a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and
(vi) a statement of the compensation to be paid for the study and testimony in the case.[17]

## New Heath Report

The Amended Heath Report begins by describing Heath's proposed testimony:

> I intend to present opinions on the following subjects, as more specifically set forth in the following paragraphs.
> 1. Discuss my background, education and experience that qualify me to testify as an expert in this action.
> 2. Provide a brief explanation of the principles of electricity.
> 3. Discuss the process for designing and building a '352 Device for testing and analysis.
> 4. Provide a description of the modus operandi of the '352 Device, likely using diagrams to illustrate my testimony.
> 5. Provide a description of the modus operandi of the Beta Product, likely using diagrams to illustrate my testimony.
> 6. Provide background testimony concerning the manufacture and sale of the Beta Product.
> 7. Offer opinion testimony concerning my review and analysis of Dr. LaFollette's Expert Report and provide my opinion that the expert report of Dr. LaFollette is accurate and correct. Offer opinion testimony concerning my review and analysis of Lynn Foster's Expert Report and provide my opinion that those portions of Mr. Foster's report concerning subject matter within the scope of my expertise are accurate and correct.
> 8. Render my opinion that the '352 device is not useful and, when use has been attempted by application of the device to a subject's lips, is harmful to the subject.
> 9. Render my opinion that the Beta product produces and uses a variable DC which is bidirectional not unidirectional.
> 10. Discuss the spacing of the probes on the '352 device.
> 11. Provide other testimony to elaborate upon and explain my opinions consistent with the specific statements and opinions set forth hereafter.[18]

The first two topics appear to be foundational and preliminary to any testimony that an expert witness might give.

---

[17] Fed R. Civ. P. 26(a)(2)(B).

[18] Amended Heath Report at 2-3.

> 1. Discuss my background, education and experience that qualify me to testify as an expert in this action.
> 2. Provide a brief explanation of the principles of electricity.

Heath also proposes to *describe* the design, construction and operation of the products at issue:

> 3. Discuss the process for designing and building a '352 Device for testing and analysis.
> 4. Provide a description of the modus operandi of the '352 Device, likely using diagrams to illustrate my testimony.
> 5. Provide a description of the modus operandi of the Beta Product, likely using diagrams to illustrate my testimony.

His report has no foundational detail for paragraphs 3 and 4 listed above. The report does not appear to include the diagrams "likely" to be used for the testimony proposed in paragraph 5.

> One topic appears to be purely factual information:
>
> 6. Provide background testimony concerning the manufacture and sale of the Beta Product.

But the report contains sparse support for this topic and in that support impermissibly draws conclusions in legal terms that Heath is not qualified to give, italicized in the paragraphs quoted below.

> 32. Some of the sales of the Beta Product were outside the U.S.
> 33. Some of the sales of the Beta Product involved defective products, not returned to Beta *and not useable to practice any method*. Others were returned to Beta.
> 39. Some of the sales of the Beta Product involved defective products, which should have been, but were not returned to Beta *but, nevertheless, were and are not useable to practice any method.* Other defective Beta Products were returned to Beta.

### Opinions

In the introductory paragraphs of his new report, Mr. Heath only speaks of giving three opinions:

> 7. Offer opinion testimony concerning my review and analysis of Dr. LaFollette's Expert Report and provide my opinion that the expert report of Dr.

>LaFollette is accurate and correct. Offer opinion testimony concerning my review and analysis of Lynn Foster's Expert Report and provide my opinion that those portions of Mr. Foster's report concerning subject matter within the scope of my expertise are accurate and correct.
>8. Render my opinion that the '352 device is not useful and, when use has been attempted by application of the device to a subject's lips, is harmful to the subject.
>9. Render my opinion that the Beta product produces and uses a variable DC which is bidirectional not unidirectional.

The first topic (paragraph 7) – vouching for the expert reports of LaFollette and Foster – is not a proper subject. The prior order striking his first report specifically pointed to this paragraph as objectionable. The second topic (paragraph 8) is also based on the report of Dr. LaFollette.

The final proposed opinion (paragraph 9) appears to be within Mr. Heath's expertise. It is the only opinion he purports to give that is consistent with the direction in the order striking Heath's prior report.

>[A]ny testimony by Mr. Heath must be limited to his opinion of core technical matters concerning the products involved, without wandering afield. Examples of such permissible statements include discussing "the spacing of the probes on the '352 device" and "the Beta device produces and uses a variable DC which is bidirectional not unidirectional." [19]

The body of the report also repeats his assertion on this issue:

>38. The Beta Product introduces a variable and bidirectional DC is [sic] on the lip of the user.

When he discusses "direction" of the current in paragraphs 19 and 20, he purports only to discuss his understanding of the court's claim construction order and concludes that "the Beta product is outside of the scope of the asserted claims." That is a legal conclusion. The order striking his prior report specifically criticized his attempt to offer legal opinions.[20] However, he

---

[19] Order Striking Heath Report at 4.

[20] *Id.* at 3.

does provide support for his evaluation of the nature of the DC current in paragraphs 21-23 and 34-37, but only by reciting documents or the statements of others. The lack of an assertion of personal observation makes the value of his assessment highly doubtful.

Elsewhere in the report, Heath describes two other opinions he will render:

- Paragraph 40 describes his opinion "that the '352 patent does not disclose and claim a useful invention." This again is a legal conclusion.

- Paragraph 42 (which runs 6 pages) expresses his opinion of validity of the patent in suit under 35 USC §103(a) in light of several documents. He testified at his deposition that he was not familiar with this statute.[21]

### Spacing of Probes

Beyond the issue of DC current direction, spacing of the probes is another topic the prior order approved for Heath.[22] The only support he provides for his stated intention to "discuss the spacing of the probes" (paragraph 10) is by reference to the statements of others. Paragraph 14 relies on a Declaration of Steven Johnson; Paragraph 24 describes the patent in suit; and paragraphs 42 (f), (k) and (l) describe documents written by others. Again, the value of these assimilations is not clear. His opinion on the issue is not stated – only that he will "discuss" the topic.

Paragraphs 14-17 contain hearsay information which does not appear to support any opinion Heath is qualified to give. Paragraph 41 appears unconnected to any opinion Heath attempts to give.

Heath includes a catch-all paragraph in his report introduction:

11.     Provide other testimony to elaborate upon and explain my opinions consistent with the specific statements and opinions set forth hereafter.

---

[21] Deposition of Chester A. Heath (September 22, 2009), page 58, lines 20-22, attached as Exhibit 1 to Plaintiff's Memorandum in Support of Its Motion to Strike the Amended Expert Report of Chester Heath and Exclude Mr. Heath's Testimony at Trial, Docket no. 274, filed October 1, 2009.

[22] Order Striking Heath Report at 4.

This paragraph foreshadows expansive testimony beyond that which is outlined in the report.

## Conclusion – Heath Report

Because of the problems with this report, the second report this witness has offered, Mr. Heath will not be allowed to amend the report. The following specification of paragraphs which survive is not an indication of what will be admissible at trial, but is intended to define the broadest parameters within which the district judge is likely to find Mr. Heath qualified to testify. Because of the confusing nature of the report, some paragraphs are not stricken because it is possible they may pertain to some helpful testimony. The body of the report is stricken except for paragraphs:

> 1, 2, 5 (except that no diagrams may be used beyond those contained in this report to support this paragraph), 6, 9, 11
>
> 12, 13
>
> 18
>
> 21-32
>
> 33 amended to read:
> > 33.   Some of the sales of the Beta Product involved defective products, not returned to Beta ~~and not useable to practice any method~~. Others were returned to Beta.
>
> 34-38
>
> 39 amended to read:
> > 39.   Some of the sales of the Beta Product involved defective products, which should have been, but were not returned to Beta ~~but, nevertheless, were and are not useable to practice any method~~. Other defective Beta Products were returned to Beta.
>
> Exhibits referenced in the stricken paragraphs are also stricken.

**Foster Report**

Mr. Foster is not seeking to give opinions about every issue in the case. In fact, his report seems more to be, as he says, "essentially confined to factual and scientific matters. . . . Statements respecting to practices, procedures and protocol in the U.S. Patent Office are also included."[23] As the report opens, he compares the new report with the old, largely stricken report: "Legal opinions pertaining to validity and infringement have been deleted."[24] In summarizing the contents of the revised report, he states:

> Paragraphs 1-28, 31-38 and 64-68 of this Report relate to science and scientific matters. Paragraphs 29, 30 and 39-47 relate to USPO rules, practices, procedures and protocol and do not invade the legal issues of non-infringement and invalidity. Paragraphs 48-52, while renumbered, were earlier approved by the Court. Paragraph 64 relates to hypothetical negotiations.[25]

His revised report does not directly address any legal issues. The report attaches numerous exhibits supporting the narrative. While there may be a serious question whether such summary testimony is helpful, cumulative, or permissible under Fed. R. Evid. 702, Defendants are entitled to argue to the district judge in the context of trial that Foster's testimony is "scientific, technical, or other specialized knowledge [that] will assist the trier of fact" and that Foster is "qualified as an expert by knowledge, skill, experience, training, or education [to] testify" thereto.

There is one clear exception. In Paragraph 69(m) at page 22 Foster states: "The position of the 1st Re Examiner is incorporated by reference because it is prosecutional history estoppel to the effect that all of the '352 claim limitations are met by Diethelm, except for the probe spacing limitation." By striking the reference to the legal term, the sentence is consistent with

---

[23] Amended Foster Report at 2.
[24] *Id.*
[25] *Id.*

the others around it in reciting factual matter. The sentence should read: "The position of the 1st Re Examiner is ~~incorporated by reference because it is prosecutional history estoppel~~ to the effect that all of the '352 claim limitations are met by Diethelm, except for the probe spacing limitation." The overstricken language is stricken from the Foster Report.

## Motion to Compel Additional Discovery

Plaintiff "moves for an Order compelling further deposition testimony of Defendants' former litigation counsel, turned expert witness, Mr. Lynn G. Foster ('Foster')."[26] "[I]f Mr. Foster is unable to answer [deposition] questions or provides evasive answers . . . Defendant Mr. Chester Heath [should be] ordered to provide such testimony."[27] Plaintiff also seeks an order compelling defendants Beta and Heath to respond to interrogatories; compelling production of all documents related to those answers; and finally for an order "compelling the production of all documents in Defendants' possession, custody or control that have been withheld or redacted on the basis of attorney-client privilege or work product immunity."[28]

Plaintiff claims that "Defendants waived their attorney-client privilege when they voluntarily designated Mr. Foster as an expert witness in this matter and Mr. Foster relied on confidential communications in forming the basis of his expert opinion."[29] Sanctions are also sought.[30]

Plaintiff does an outstanding job of weaving case law and the facts of this case into its argument that all privilege that attached during Mr. Foster's relationship as trial counsel is now

---
[26] Motion to Compel at 1.
[27] *Id.* at 2.
[28] *Id.*
[29] *Id.* at 1.
[30] *Id.* at 2.

waived because of his transition to expert witness status. Pillars of the argument include cases holding that an attorney expert giving opinion testimony has no privilege as to the acquisition of those opinions.[31] Then Plaintiff cites Mr. Foster's testimony that he "relied on Defendants' entire Amended Answer in formulating his expert report . . . ."[32] Because of the general principle that "[a]ll documents and communications, whether rejected or relied upon, privileged or not, which are considered by an expert in preparation of his expert testimony are discoverable,"[33] Plaintiff argues that "[f]acts and communications relied on by Mr. Foster in formulating Defendants' Amended Answer are no longer protected by the attorney-client or the work product immunity."[34]

The problem with Plaintiff's argument is in its foundation. Mr. Foster's revised report is not as broad as the Amended Answer. This is not a case where Foster's prior legal opinion is at issue. Nowhere in his report does he state that he gave a legal opinion to Defendants.

Comparing cases Plaintiff cites in support of its claim for more discovery from Foster shows they do not apply. In *Dion v. Nationwide Mut. Ins. Co,*[35] the defendant insurer sought to use its counsel on the plaintiff's underinsured motorist's claim as an expert witness against the insured's bad faith claim. The essence of a bad faith action is whether the decision to deny a claim was justified. The insurer's counsel's "conclusions and expert opinions regarding the underlying claim" were directly at issue. "[Plaintiff's] case will perforce place at issue [the

---

[31] *Vaughan Furniture Co. Incorp. v. Featureline Mfg., Inc*., 156 F.R.D. 123, 128 (M.D.N.C. 1994); *Dion v. Nationwide Mutual Insurance Co*., 185 F.R.D. 288, 295-96 (D. Mont. 1998); *Bio- Rad Laboratories, Inc. v. Pharmacia, Inc*., 130 F.R.D. 116, 123, 125 (N.D. Cal. 1990). Plaintiff's Memorandum in Support of Its Motion to Compel Testimony of Expert Witnesses and Discovery Responses (Memorandum in Support of Motion to Compel) at 3, docket no. 307, filed October 23, 2009.

[32] Memorandum in Support of Motion to Compel at 4.

[33] Memorandum in Support of Motion to Compel at 4 (citing *Mushroom Assoc. v. Monterey Mushrooms Inc*., 25 USPQ 2d 1304, 1309 (N.D. Cal. 1992)).

[34] Memorandum in Support of Motion to Compel at 5.

[35] 185 F.R.D. 288, 295-96 (D. Mont. 1998).

attorney's] handling of the underlying claim."[36] The court held that privilege protection was waived because "[o]pinion work product is discoverable . . . when mental impressions are directly at issue in a case and the need for the material is compelling."[37]

In *Bio-Rad Laboratories, Inc., v. Pharmacia, Inc.,*[38] Bio-Rad's litigation firm had also prosecuted Bio-Rad's patent application. In the patent process, one of the firm's attorneys wrote a letter to the patent office opining that a specific product did not constitute prior art. That attorney withdrew from acting as litigation counsel and then was designated as an expert witness. Bio-Rad resisted the deposition because the attorney's "opinions concerning . . . alleged prior art are inextricably intertwined with the mental impressions, conclusions, opinions and legal theories"[39] developed as trial counsel. But the trial court held there was "a showing of exceptional need" because a "fundamental issue in this case concerns the statement [the lawyer] made in his amendment to the '366 patent that the data contained in the . . . article was impossible to duplicate and, therefore, the article did not constitute prior art."[40]

In both these cases, the opinion of the attorney-expert clearly implicated prior work by the attorney. Because Foster stated in his deposition that he "relied on Defendants' entire Amended Answer in formulating his expert report,"[41] Plaintiff claims it is entitled to discover Foster's communications and documents *regarding anything in the Amended Answer* which includes "allegations of patent invalidity, claim interpretation, lack of infringement, estoppel, laches, inequitable conduct, intervening rights, NEXMED's knowledge of Defendants' products,

---

[36] *Dion,* 185 F.R.D. at 295.

[37] *Dion,* 185 F. R. D. at 292.

[38] 130 F.R.D. 116, 123, 125 (N.D. Cal. 1990)

[39] *Bio-Rad,* 130 F.R.D. at 122.

[40] *Id.* at 124.

[41] Memorandum in Support of Motion to Compel at 4.

patent misuse, exceptional case status, NEXMED's lack of damages, Defendants' accused product and comparison to the patent-in-suit."[42] Plaintiff says that "[s]uch information is no longer privileged because Mr. Foster considered this information in forming his expert report."[43]

Plaintiff reaches too far. The entire Amended Answer is not put at issue by Mr. Foster's report; his report is at issue. And Mr. Foster's testimony at trial, if any, will be confined to the report, not defined by the Amended Answer. The court will not "compel Mr. Foster to answer all questions related to the factual basis of any allegation contained within Defendants' Amended Answer"[44] because Mr. Foster's trial testimony is within his report, not as broad as the Amended Answer.

Plaintiff is entitled to ask questions and have information regarding the report. Plaintiff claims the right to additional deposition questions and production of documents.

## Deposition Questions

Plaintiff compiled "[t]he specific questions, Mr. Foster's evasive answers, and Defendants' counsel's objections" in an exhibit to the memorandum in support of this motion.[45] The questions summarized illustrate the overbreadth of the deposition questions:

> Q. You'll agree with me that the Amended Answer, NexMed Deposition Exhibit Number 102, denies infringement of the U.S. patent number 5,133,352; is that right?
> A. Well, it's a general denial of the allegations in the complaint, yes, sir.
> Q. Now, what was your factual basis for this denial?[46]
>
> Q. (By Mr. Cepuritis) First of all, this question simply requires a yes or no answer. Did you at any time render to Chester Heath or Beta Technologies, Inc. a non-infringement opinion regarding U.S. patent number 5,133,352?[47]

---

[42] Memorandum in Support of Motion to Compel at 5.

[43] *Id.* at 6.

[44] Memorandum in Support of Motion to Compel at 6.

[45] *Id.*; Exhibit 4 to Memorandum in Support of Motion to Compel.

[46] Exhibit 4 at 1.

[47] *Id.* at 2.

> Q. Did you at any time render an opinion to either Mr. Heath or Beta Technologies, Inc. regarding laches in this litigation?[48]
>
> Q. (By Mr. Cepuritis) Continuing, Mr. Foster, did you at any time render an opinion either to Mr. Heath or Beta Technologies, Inc. regarding equitable estoppel in this case?[49]

These questions inquire *about* opinions given by Foster *related to* topics *addressed* in the Amended Answer -- which is a document *considered by* Mr. Foster in rendering his report. The revised report does not discuss Foster's opinions or the legal terms of those defenses.

### Responses to Written Discovery

Similar to the request to compel broad deposition testimony from Foster, Plaintiff seeks to compel responses to broad written discovery.

> INTERROGATORY NO. 1 (Beta): Identify each and every communication pertaining to this lawsuit, oral as well as written, between Defendant's Patent Expert, Mr. Foster and (a) Defendant's Trial Counsel and (b) Beta Technologies Inc.
> INTERROGATORY NO. 1 (Heath): Identify each and every communication pertaining to this lawsuit, oral as well as written, between Defendant's Patent Expert, Mr. Foster and (a) Defendant's Trial Counsel and (b) Chester Heath.
> INTERROGATORY NO. 3 (Beta and Heath): Identify each and every document supplied to Defendant's Trial Counsel by Defendant's Patent Expert Mr. Foster.

An accompanying request for production seeks "all documents identified in response" to the interrogatories.[50]

The written discovery suffers from the same overbreadth defect as the proposed deposition questions.

---

[48] *Id.*

[49] *Id.* at 4.

[50] Memorandum in Support of Motion to Compel at 8.

### Redacted Communications

"Defendants documents, bates numbered BETA 0001, 0778, 0821- 0823, include redacted communications between Mr. Foster, Mr. Heath and Defendants' current counsel regarding Mr. Foster's expert testimony."[51] The documents[52] appear to be clearly in the context of communications about the expert testimony. Unredacted versions will be provided to the court within ten days of the filing of this order and the court will screen them before providing them to Plaintiff.

### ORDER

IT IS HEREBY ORDERED that the motions[53] are GRANTED IN PART and DENIED IN PART as provided herein.

Dated this 26th day of April 2010.

BY THE COURT:

_____
David Nuffer
United States Magistrate Judge

---

[51] Memorandum in Support of Motion to Compel at 8.

[52] Attached as Exhibit 9 to Memorandum in Support of Motion to Compel.

[53] Plaintiff's Motion to Strike Portions of the Amended Expert Report of Lynn G. Foster and Exclude Testimony, docket no. 275, filed October 1, 2009; Plaintiff's Motion to Strike the Amended Expert Report of Chester Heath and Exclude Mr. Heath's Testimony at Trial, docket no. 273, filed October 1, 2009; Plaintiff's Motion to Compel Testimony of Expert Witnesses and Discovery Responses, docket no. 306, filed October 23, 2009